**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** New York
-----------------------------------------------------------------**x**
ANTONIO MADERA

Plaintiff/Petitioner,

- against -                                    Index No.152364/2021

THE CITY OF NEW YORK, et al.

Defendant/Respondent.

-----------------------------------------------------------------**x**

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

> 1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

> 2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney.  (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: 10/6/2023

Cassandra Rohme, Esq.
Name
LIAKAS LAW, P.C.

Firm Name

40 Wall Street, 50th Floor
Address

New York, NY 10005

212-937-7765
Phone

crohme@liakaslaw.com
E-Mail

To: _____

Attorney General of the US

SDNY US Attorney

Case 1:24-cv-02903-PKC    Document 1-1    Filed 04/17/24    Page 3 of 29

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------X    Index No.: 152364/2021

ANTONIO MADERA,

**SECOND SUPPLEMENTAL**
                  Plaintiff,                         **SUMMONS**

      - against-

                                                Plaintiff designates
THE CITY OF NEW YORK, CRAIG W. TIETJEN, WILLIAM    New York County as the
ARNOLD, METEHAN EGILMEZ, OMAR SAAD, and      place of trial
DOUGLAS LOPEZ,

                                                The basis of venue is:
Defendants.                                    The situs of occurrence

------------------------------------------------------------------------X

TO THE ABOVE-NAMED DEFENDANTS:

     **YOU ARE HEREBY SUMMONED** to answer the second amended complaint in this action and to serve a copy of your answer, to, if the second amended complaint is not served with the second supplemental summons, to serve a notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this second supplemental summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this second supplemental summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
       August 22, 2023

                                    **LIAKAS LAW, P.C.**
                                    *Attorneys for Plaintiff*
                                    40 Wall Street, 50th Floor
                                    New York, N.Y. 10005
                                    (212) 937-7765

                                    CASSANDRA ROHME, ESQ.

TO DEFENDANTS: See Service Rider

Case 1:24-cv-02903-PKC Document 1-1 Filed 04/17/24 Page 4 of 29

# SERVICE RIDER

THE CITY OF NEW YORK
Office of the Corporation Counsel
100 Church Street
New York, New York 10007

CRAIG W. TIETJEN
United States Park Police
Staten Island Unit Headquarters
210 New York Ave.
Staten Island, New York, 10305

WILLIAM ARNOLD
United States Park Police
Staten Island Unit Headquarters
210 New York Ave.
Staten Island, New York, 10305

METEHAN EGILMEZ
United States Park Police
Staten Island Unit Headquarters
210 New York Ave.
Staten Island, New York, 10305

OMAR SAAD
NYPD Police Service Area 3
25 Central Avenue
Brooklyn, New York 11206

DOUGLAS LOPEZ
NYPD 1st precinct
16 Ericsson Place
New York, New York 10013

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM
NYSCEF DOC. NO. 12

INDEX NO. 152364/2021
RECEIVED NYSCEF: 08/22/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------- X

ANTONIO MADERA,

                              Plaintiff,

            -against-

THE CITY OF NEW YORK, CRAIG W. TIETJEN,
WILLIAM ARNOLD, METEHAN EGILMEZ, OMAR
SAAD, and DOUGLAS LOPEZ,

                              Defendants.

------------------------------------------------------------------------- X

Index No: 152364/2021

**SECOND AMENDED
VERIFIED COMPLAINT**

 

Plaintiff, ANTONIO MADERA by his attorneys, LIAKAS LAW, P.C., as and for this

Second Amended Verified Complaint, filed pursuant to CPLR § 3025(a), alleges as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983,

*Bivens*, and applicable state law, for the violation of his rights privileges and immunities

guaranteed by the United States Constitution and federal law.

2.     The claim arises from a January 7, 2020, incident in which Officers of the New York

City Police Department ("NYPD"), and the United States Park Police ("USPP"), acting jointly and

in concert, under color of state law, did intentionally and willfully subject plaintiff to false arrest,

malicious prosecution, assault, battery, and excessive force, and other violations of Plaintiff's

Fourth and Fourteenth Amendment rights.

3.     On or about January 7, 2020, NYPD Police Officers OMAR SAAD and DOUGLAS

LOPEZ and USPP Officers CRAIG W. TIETJEN, WILLIAM ARNOLD, and METEHAN

EGILMEZ, acted in concert and/or otherwise jointly to falsely arrest, maliciously prosecute,

assault, batter, and/or use excessive force against Plaintiff as well as to deny him adequate medical

1

treatment and care for his injuries.

4.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

5.    Within 90 days of the incidents alleged in this complaint, Plaintiff served upon Defendant, THE CITY OF NEW YORK, a Notice of Claim setting forth the name and post office address of Plaintiff, the nature of the claim, the time when, the place where and the manner in which the claim arose, and the items of damages or injuries claimed.

6.    More than 30 days have elapsed since Plaintiff's Notice of Claim was served on Defendant.

7.    Venue is proper in the Supreme Court of the State of New York, New York County, because the acts in question occurred in the State of New York, New York County, and THE CITY OF NEW YORK is subject to personal jurisdiction in the Supreme Court of the State of New York, New York County.

8.    Venue is also proper in New York County as, upon information and belief, Defendant CRAIG W. TIETJEN is domiciled in New York County.

9.    A Supplemental Summons and Amended Complaint was filed in this action, pursuant to stipulation of all parties on or about August 15, 2022, pursuant to CPLR § 3025(b), and superseding the prior pleadings in the action.

10.    Defendant CITY OF NEW YORK was duly and personally served with the Supplemental Summons and Amended Complaint on August 18, 2023.

2

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM    INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                                   RECEIVED NYSCEF: 08/22/2023

11.     Defendants' time to respond to the Supplemental Summons and Amended Complaint has not yet expired, and as such, Plaintiff is entitled to amend the pleadings as of right, and without leave of Court pursuant to CPLR § 3025(a).

## PARTIES

12.     Plaintiff, ANTONIO MADERA (hereinafter "Plaintiff"), is a legal resident of the United States, residing in the State of New York, County of the Bronx.

13.     THE CITY OF NEW YORK (or "the CITY") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant CITY, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel.

14.     At all times here relevant, Defendant CITY was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

15.     Defendant OMAR SAAD was at all relevant times, a police officer employed by the NYPD, and is sued in his individual capacity.

16.     Defendant DOUGLAS LOPEZ was at all relevant times, a police officer employed by the NYPD, and is sued in his individual capacity.

17.     Defendant CRAIG W. TIETJEN was at all relevant times an employee of the USPP, acting as a New York State Peace Officer, and is sued in his individual capacity.

18.     Defendant WILLIAM ARNOLD was, at all relevant times, an employee of the USPP, acting as a New York State Peace Officer, and is sued in his individual capacity.

19.     Defendant JMETEHAN EGILMEZ was, at all relevant times, an employee of the USPP,

3

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM    INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                    RECEIVED NYSCEF: 08/22/2023

acting as a New York State Peace Officer, and is sued in his individual capacity.

20.    Although Defendants TIETJEN, ARNOLD, and EGILMEZ were employes of the USPP on the date of incident, they were not acting within the scope of their employment at the time they committed the acts and omissions alleged herein.

21.    At all times mentioned herein, Defendants TIETJEN, ARNOLD, and EGILMEZ were acting pursuant to their alleged authority under New York State law, jointly and in concert with Defendants SAAD, and LOPEZ who purported to act on behalf of Defendant THE CITY OF NEW YORK.

22.    At all times mentioned herein, Defendants TIETJEN, ARNOLD, and EGILMEZ were not performing acts authorized by federal law.

23.    At all times mentioned herein, the acts and omissions of Defendants TIETJEN, ARNOLD, and EGILMEZ were not necessary and proper to the fulfillment of their federal duties.

24.    At all times mentioned herein, the acts and omissions of Defendants knew that their actions and omissions were unjustified.

25.    Defendants TIETJEN, ARNOLD, and EGILMEZ are not entitled to immunity arising from the Supremacy Cause or any other federal immunity for their actions, which were taken wholly and exclusively under state law.

26.    At all times mentioned herein, defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

27.    At all times mentioned herein, defendants TIETJEN, ARNOLD, and EGILMEZ, were acting and/or purported to act under color of New York State Law, and as persons designated as "peace officers" under State Law, including, but not limited to N.Y. Crim. Pro. Law §§ 2.20 and

4

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM    INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                          RECEIVED NYSCEF: 08/22/2023

140.25.

28.     Pursuant to New York State Executive Order, all causes of action arising in the State of New York were tolled for a period of 228 days between March 20, 2020, and November 3, 2020, and as such, Plaintiff's claims are timely made.

## FACTUAL ALLEGATIONS

29.     On January 7, 2020, Plaintiff was employed by Midtown Tours, a tourism company.

30.     Plaintiff's job involved managing ticket selling agents and selling tickets for boat tours leaving from the Battery Park area of Manhattan.

31.     Upon information and belief, at all times here relevant, Plaintiff held a valid ticket seller license issued by the New York City Consumer Affairs Department.

32.     On January 7, 2020, Plaintiff was working as a manager for Midtown Tours in New York County.

33.     Plaintiff was at or near the intersection of Battery Place and West Street, on the public sidewalk abutting Battery Park, in the State, City, and County of New York.

34.     At approximately noon, Plaintiff, a black male, was approached by Defendants SAAD, EGILMEZ, CRAIG W. TIETJEN, WILLIAM ARNOLD, all of whom were at all relevant times acting jointly and/or in concert, and under color of state law.

35.     Defendants approached Plaintiff from behind and demanded to search Plaintiff.

36.     Plaintiff objected to the search and asked why they wanted to search him.

37.     Plaintiff had not committed any crime, nor did Defendants have probable cause or reasonable suspicion to believe that any crime had been committed.

38.     Under the New York State Law as articulated in *People* v. *Debour*, Defendants

5

SAAD, TIETJEN, ARNOLD, and EGILMEZ, were prohibited from pursuing Plaintiff when he declined to be searched and were required to let him walk away.

39.    Instead, when Plaintiff walked away from Defendants SAAD, EGILMEZ, TIETJEN, and ARNOLD, in concert and acting jointly, assaulted, battered, and used excessive force against Plaintiff by striking him about the head and body, forcing him from his feet to ground, and striking him on the head with objects believed to be Defendants police batons.

40.    After Plaintiff fell to the ground, defendants SAAD, EGILMEZ, TIETJEN, and ARNOLD, continued to restrain and strike him while he was in a prone position, facing downward on the ground.

41.    After Plaintiff was restrained in a prone position, Defendant SAAD repeatedly punched Plaintiff in the head.

42.    Plaintiff did not resist or attempt to resist the officers.

43.    Plaintiff did not strike nor attempt to strike any officer.

44.    Defendants, SAAD, EGILMEZ, TIETJEN, and ARNOLD, failed to intervene in the unlawful arrest and excessive force used against Plaintiff by their co-Defendants

45.    Defendants refused to provide any medical treatment and care to Plaintiff and refused to ensure that he was taken to a hospital until bystanders called an ambulance.

46.    Defendant ARNOLD was directly questioned at the scene by bystanders who accused him of striking Plaintiff excessively with his weapon when Plaintiff was facing away from him and posed him no threat – he remained silent in the face of these direct and obvious accusations.

47.    At the hospital Plaintiff was displaying clear signs of a traumatic brain injury including confusion, agitation, repeating and/or looping words and phrases, and inability to recall

6

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM    INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                RECEIVED NYSCEF: 08/22/2023

the date or year.

48.    Defendants TIETJEN and ARNOLD were not honest with the medical staff about the extent of the force used against the Plaintiff.

49.    Defendants TIETJEN and ARNOLD did not tell the medical staff that Plaintiff had been struck on the skull repeatedly with police issued batons or "billy club" but claimed he had only been punched in the face three times which was untrue.

50.    Defendants TIETJEN and ARNOLD did not tell the medical staff that Plaintiff had become mute and unresponsive at the scene for several minutes following their assault of Plaintiff.

51.    A true and accurate screenshot of Plaintiff and Defendant ARNOLD at the scene after he became unresponsive is included herein at Figure 1.

*Figure 1:*



52.    Defendants TIETJEN and ARNOLD misled the medical personnel about the nature

7

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM    INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                     RECEIVED NYSCEF: 08/22/2023

of Plaintiffs injuries and symptoms to prevent Plaintiff from being assessed and treated for his obvious head injuries.

53.    Defendants TIETJEN and ARNOLD prevented Plaintiff from receiving a complete medical evaluation because, upon information and belief, they knew imaging and other medical studies would show he suffered a traumatic brain injury from the prior use of excessive force against him.

54.    Defendants TIETJEN and ARNOLD falsely claimed and/or falsely suggested to medical personnel that Plaintiff was suffering a psychiatric episode and/or was merely behaving badly and demanded that he be sedated against his will before they removed his handcuffs and allowed him to be treated.

55.    Defendants TIETJEN and ARNOLD refused to allow Plaintiff to receive appropriate medical treatment and care unless the doctors gave Plaintiff an injection to sedate him.

56.    The plaintiff feared for his safety as he is allergic to Haldol, the medication that the doctor threatened to inject him with at the demand of TIETJEN and ARNOLD.

57.    Plaintiff vehemently refused to be injected with a medication that he knew could seriously harm or kill him.

58.    The medical staff agreed not to inject Plaintiff with a sedative but could not examine him properly unless Defendants TIETJEN and ARNOLD ceased their interference which they in turn refused to do unless Plaintiff was sedated.

59.    Defendants TIETJEN and ARNOLD prevented Plaintiff from receiving a necessary and complete medical evaluation and removed him from the hospital within just over one hour after his arrival.

60.    Defendants had no right to make these demands, to discuss Plaintiff's medical

8

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM   INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                RECEIVED NYSCEF: 08/22/2023

treatment, nor any right to interfere with or prevent Plaintiff's medical treatment and care.

61.     After he was removed from the hospital, the Plaintiff was then taken to the NYPD's First Precinct by Defendants TIETJEN and ARNOLD.

62.     At the first precinct, Plaintiff continued to exhibit symptoms indicative of a traumatic brain injury, including confusion, agitation, unsteady gait, dysregulation, and other unusual behaviors, but was not provided any medical treatment or care.

63.     Defendant ARNOLD threw Plaintiff to the ground in front of the desk, and while he was rear-handcuffed and while Defendants TIETJEN and LOPEZ and other unidentified officers observed this and failed to intervene.

64.     Plaintiff was left on the ground for a number of minutes in rear handcuffs before he was finally brought to a holding cell.

65.     In the precinct holding cell, Defendants LOPEZ, TIETJEN, and ARNOLD assaulted, battered, and used excessive force against Plaintiff and/or failed to intervene to prevent or stop same.

66.     Prior to the assault, Defendant ARNOLD was also accused in the precinct of hitting Plaintiff in the head with a "billy club" and again ARNOLD remained silent in the face of these direct accusations.

67.     Defendant LOPEZ and TIETJEN assaulted, battered, and used excessive force against Plaintiff.

68.     Defendant LOPEZ punched Plaintiff in the face while he was rear-handcuffed and held by multiple officers and in front of TIETJEN and ARNOLD who failed to intervene.

69.     Before striking Plaintiff, LOPEZ intentionally obscured his Body Worn Camera (BWC) as demonstrated in Figure 2 below, which is a true and accurate screenshot of LOPEZ's

9

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM   INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                    RECEIVED NYSCEF: 08/22/2023

BWC video:

*Figure 2:*



70.     Plaintiff was visibly suffering from multiple injuries, including his new injuries inflicted by LOPEZ, but the Defendants failed to obtain medical attention for Plaintiff in violation of his constitutional rights.

71.     Defendant LOPEZ admitted on the recording to both punching Plaintiff and that he intended to make false statements in NYPD paperwork to falsely justify excessive force used against Plaintiff, including falsely claiming that Plaintiff tried to strike him.

72.     Defendants processed Plaintiff's arrest, prepared paperwork related to his arrest, and conferred with the District Attorney's office to bring criminal charges against Plaintiff.

73.     Defendants communicated with a representative of the District Attorney's Office, and presented false evidence to the prosecutor despite knowledge that this information would be used to prosecute Plaintiff.

74.     Defendants TIETJEN and ARNOLD ultimately charged Plaintiff with violations of

10

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM        INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                        RECEIVED NYSCEF: 08/22/2023

New York State Penal Law § 195.05, Obstruction of Governmental Administration; § 205.30, Resisting Arrest; and §§ 240.26 (3) and (2) Harassment in the Second Degree without probable cause.

75.    The plaintiff was arraigned on January 8, 2020, and released on his own recognizance.

76.    Plaintiff was required to appear in Criminal Court several more times before the case was ultimately dismissed.

77.    All charges against the plaintiff were dismissed by the Kings Supreme Criminal Court on or about July 14, 2020.

78.    It is hereby alleged pursuant to CPLR 1603 that the causes of action alleged herein are exempt from the operation of CPLR 1601, including, but not limited by reason of one or more of the exemptions provided in CPLR § 1602

79.    Defendant THE CITY OF NEW YORK is responsible for the tortious acts and omissions of its agents, servants, and employees, including, but not limited to SAAD and LOPEZ pursuant to the doctrine of *respondeat superior*.

80.    As a direct and proximate result of the malicious and outrageous conduct of Defendants set forth, Plaintiff suffered, and continues to suffer, injuries and damages that exceed all jurisdictional limits of the lower courts, including, but not limited to:

1.    Violation of his right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

2.    Violation of his rights under the Fourth Amendment to the United States Constitution to be free unreasonable search and seizure;

3.    Physical injuries including severe neck and back injuries;

11

4. Physical pain and suffering;

5. Loss of Liberty;

6. Emotional distress, including fear, embarrassment, frustration, extreme inconvenience, and anxiety.

## FIRST CAUSE OF ACTION
### Pursuant to 42 U.S.C. § 1983 – Against the Individual Defendants

81. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

82. Defendants have deprived Plaintiff of his civil, Constitutional, and statutory rights under color of state law and have conspired to deprive him of such rights and are liable to Plaintiff under 42 USC § 1983.

83. Defendants TIETJEN, ARNOLD, and EGILMEZ, acted under color of state law by virtue of their unlawful acts and omissions which were committed willfully and jointly and/or in conspiracy with state actors including, but not limited to THE CITY OF NEW YORK, and members of the NYPD including SAAD and LOPEZ.

84. Defendants TIETJEN, ARNOLD and EGILMEZ, acted under color of state law by invoking the limited powers afforded to them as Peace Officers by the New York State Criminal Procedure Law.

85. Defendants conspired to ensure that Plaintiff was further injured by excessive force, maliciously prosecuted, and denied medical treatment and care in part to coverup the first incident of false arrest and excessive force that occurred on the sidewalk.

86. Defendants' conduct deprived Plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

12

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM    INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                      RECEIVED NYSCEF: 08/22/2023

87.    Defendants falsely arrested Plaintiff in violation of his rights under the Fourth and Fourteenth Amendments.

88.    Defendants maliciously prosecuted Plaintiff in violation of his rights under the Fourth and Fourteenth Amendments.

89.    Defendants used excessive and unnecessary force against Plaintiff in violation of his rights under the Fourth and Fourteenth Amendments.

90.    Defendants presented false evidence against Plaintiff, thereby denying his right to a fair trial, in violation of his right to Due Process under the Fourteenth Amendment.

91.    Defendants denied Plaintiff medical treatment and care and interfered with his access to medical treatment and care.

92.    Defendants failed to intervene in each other's obviously illegal actions.

93.    Plaintiff has been damaged as a result of Defendants' conduct.

## SECOND CAUSE OF ACTION
### False Arrest as to THE CITY OF NEW YORK, SAAD, TIETJEN, ARNOLD, and EGILMEZ

94.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

95.    Defendants SAAD, TIETJEN, ARNOLD, and EGILMEZ subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

96.    Defendants SAAD, TIETJEN, ARNOLD, and EGILMEZ intended to confine plaintiff and in fact confined him.

97.    Plaintiff was conscious of the confinement and did not consent to it.

98.    The confinement was not privileged.

13

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM    INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                                      RECEIVED NYSCEF: 08/22/2023

99.     Defendant THE CITY OF NEW YORK is responsible for the tortious acts and omissions of its agents, servants, and employees, including, but not limited to SAAD and LOPEZ pursuant to the doctrine of *respondeat superior*.

100.    Plaintiff was damaged by his false arrest.

## THIRD CAUSE OF ACTION
### Malicious Prosecution – as to all Individual Defendants

101.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

102.    Defendants, acting with malice, initiated a prosecution against the plaintiff and caused him to be prosecuted.

103.    Defendants did not have probable cause to initiate any of the charges.

104.    Defendants did not have probable cause to initiate the proceedings against Plaitniff.

105.    The criminal proceedings were terminated in plaintiffs' favor.

106.    Defendant THE CITY OF NEW YORK is responsible for the tortious acts and omissions of its agents, servants, and employees, including, but not limited to SAAD and LOPEZ pursuant to the doctrine of *respondeat superior*.

107.    As a result of the malicious prosecution implemented by defendants, plaintiff was damaged.

## FOURTH CAUSE OF ACTION
### Assault and Battery as to all Defendants

108.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

109.    Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

14

110.     Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under common law, and the laws and Constitution of New York State.

111.     Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him.

112.     Defendants used excessive and unnecessary force with plaintiff.

113.     Defendant THE CITY OF NEW YORK is responsible for the tortious acts and omissions of its agents, servants, and employees, including, but not limited to SAAD and LOPEZ pursuant to the doctrine of *respondeat superior*.

114.     Plaintiff was damaged by defendants' assault and battery.

### FIFTH CAUSE OF ACTION
**Pursuant to 42 U.S.C. § 1984, *Monell* claim against
Defendant THE CITY OF NEW YORK**

115.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraph as if set forth fully herein.

116.     Defendant THE CITY OF NEW YORK violated Plaintiff's rights, privileges, and immunities secured by the Constitution of the United States, including the 4th and 14th Amendments and Federal law.

117.     Claim is made pursuant to 42 U.S. § 1983 under the doctrine first articulated by the United States Supreme Court in *Monell v. Department of Social Services*.

118.     The CITY OF NEW YORK is liable to Plaintiff given its recalcitrant patterns and practices as well as persistent failure to train its agents, servants, and employees with respect to: 1) *Debour* and/or analyzing the conduct required to stop, question, frisk, pursue, and detain and/or arrest citizens in street encounters; 2) the use of BWC; 3) providing and/or obtaining emergency

15

medical treatment for arrestees; and 4) the duty to intervene to prevent other law enforcement officers from violating the civil rights of arrestees and/or citizens.

119. Filed on January 31, 2008, *Floyd v. City of New York*, remains open for Court appointed monitorship of THE CITY OF NEW YORK's compliance with the settlement agreement obtained subsequent to the Court's finding that THE CITY OF NEW YORK engaged in unconstitutional and discriminatory patterns and practices in its use of Terry Stops also known as "stop and frisk" or "stop, question, and frisk" [hereinafter as "SQF"].

120. The pleadings, transcripts, and decision in Floyd as well as the monitor reports are incorporated hereto by reference.

121. The 2020 NYPD Enforcement Report admitted that the majority of NYPD uniformed officers were white.

122. The 2020 NYPD Enforcement Report admitted that Black individuals were the most frequent racial group subjected to Stop, Question, and Frisk [hereinafter as "SQF"] by NYPD officers.

123. The 2020 NYPD Enforcement Report stated that 56.6% of all individuals subjected to SQF by NYPD were black and/or African American.

124. The actions of the Individual Defendants were the result of THE CITY OF NEW YORK's deliberate indifference to the rights of its Black citizens, including the Plaintiff.

125. The actions of the Individual Defendants were part of THE CITY OF NEW YORK's custom and/or practice of racial profiling, and/or meeting arrest or summons quotas, and/or the illegal stop and search of civilians which was authorized by, or met with the tacit approval of THE CITY OF NEW YORK under the NYPD's "Stop, Question and Frisk" policy or program [hereinafter as "SQF" or "Stop and Frisk"].

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM    INDEX NO. 152364/2021
NYSCEF DOC. NO. 12    RECEIVED NYSCEF: 08/22/2023

126.     Under Stop and Frisk, THE CITY OF NEW YORK permitted, condoned and/or acted with deliberate indifference to the rights of its citizens and visitors, especially those who are Black males.

127.     In *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2013), it was held that the CITY OF NEW YORK through the NYPD, its agents, servants, and employees, violated the rights of numerous Black men through its policy and procedure of increasing SQF stops since 2004.

128.     The remedial order in *Floyd v. City of New York*, mandated the involvement of a court-appointed monitor to establish policies and procedures for NYPD's body-worn camera program.

129.     There is no question that the implementation of BWCs across the NYPD has been useful in identifying officers who are responsible for unlawful acts and constitutional violations.

130.     However, NYPD is also aware that officers are intentionally removing and/or obscuring their BWC footage before, during and after problematic encounters.

131.     As reported by the Civilian Complaint Review Board (CCRB) in February of 2020, and observed by the undersigned in may force cases, including the instant case, Officers have also been seen and heard intentionally obscuring their BWCs or signaling to each other to remove or turn off their cameras to avoid documenting misdeeds, crimes, and constitutional violations.

132.     In February of 2020, the CCRB recommended that NYPD amend its BWC policies to make intentionally hindering a BWC recording a prohibited act.

133.     To date, NYPD has refused to do so.

134.     The refusal to promulgate a policy which makes clear that intentionally obscuring one's camera is misconduct, has clearly empowered unscrupulous officers like LOPEZ to obscure their BWC while committing unlawful acts.

17

FILED: NEW YORK COUNTY CLERK 08/22/2023 06:59 PM   INDEX NO. 152364/2021
NYSCEF DOC. NO. 12                                          RECEIVED NYSCEF: 08/22/2023

135.     There is no justifiable reason for THE CITY OF NEW YORK to continue a policy which allows this blatant unconstitutional misconduct to continue unabated, especially as the act of obscuring a BWC to prevent one's actions from being recorded, demonstrates a fundamental lack of integrity shared only by the worst officers.

136.     Similarly, NYPD has failed to properly train its officers to prevent unlawful street-encounters,

137.     The Patrol Guide 212-11 covers investigative encounters, but at 16 pages long, most officers have not read or understood the law which governs street encounters, or the policy enacted by NYPD which purports to obtain their compliance with the law.

138.     Training on SQF and other critical legal and procedural concepts that officers frequently misunderstand and/or ignore has never ventured beyond pre-recorded rote, videos that recite the law without giving any relevant context.

139.     These videos are usually shown at roll call, not formalized training, and quickly ignored after they are viewed.

140.     For all of the millions of dollars that THE CITY OF NEW YORK spends on tactical and weapons trainings, and policies related thereto, it spends very little time and money ensuring that its employees are properly trained in realistic scenarios geared toward conducting the basic street-level encounters that make up the majority of citizen interaction and majority of constitutional violations by the NYPD, as here.

141.     Along the same lines, the NYPD has failed to update or enhance the limited direction it has given officers with respect to reporting excessive force and ensuring that arrestees like Plaintiff are given medical treatment.

18

142.   Patrol Guide 221-10 contains the following three sentences which have remained virtually unchanged for decades: "Failure to intervene in the use of excessive force or report excessive force or failure to request or ensure timely medical treatment for an individual is serious misconduct that may result in criminal and civil liability and will result in department discipline up to and including dismissal.  If a member of service becomes aware of the use of excessive force or failure to request or ensure timely medical treatment for an individual, the member must report such misconduct to the Internal Affairs Bureau Command Center.  This report can be made anonymously."

143.   These three sentences may be the least followed portion of all of the thousands of pages of the patrol guide.

144.   IAB is rarely contacted about injuries to arrestees, including those which result in hospitalization, including the incidents that form the basis of this complaint.

145.   In every CITY OF NEW YORK office, usually by the printer,

146.   The policy does not expand on how to contact IAB or what protections will be given to officers who cooperate with "the rat squad" as IAB is commonly referred to by officers.

147.   The policy does not discuss the protections for whistleblowers or provide any information that would allow an officer to feel comfortable reporting a use of force that was unconstitutional given that they too will be deemed a "rat" for doing so.

148.   Perhaps more curiously, despite providing training and instruction for literally every possible piece of paperwork that may be filled out and endless videos and tactical training scenarios for situations that most officers will never encounter, the NYPD provides zero training or instruction on how to effectively intervene in excessive force and report their fellow officers for using excessive force.

19

149.   The NYPD does not even provide any elaboration on this three-sentence policy, buried among thousands of pages of other policies.

150.   The NYPD has also failed to promulgate a policy of intervening in and reporting other unconstitutional behaviors like false arrest, malicious prosecution, or even, "testalying" – the NYPD's term for police perjury.

151.   Despite the policy, promulgated by THE CITY OF NEW YORK, the actual custom and practice is that when an NYPD officer reports on another officer, they are a "rat," or somewhat less severe, a "shakebox" – someone who wants to follow the rules and law, and are ostracized as such.

152.   It is dangerous to be a rat, especially when you may need to depend on your fellow officers to protect you in the field.

153.   More importantly, perhaps, reporting fellow officers in an organization as insular and indoctrinated as the NYPD, is an act of social deviance, that feels like a criminal act and is often treated like one.

154.   As former Detective Jeffrey McAvoy recalled to the New York Times, when he called IAB in 2008 to report a lieutenant of stealing thousands of dollars from a drug dealer he was physically ill at the idea of following this policy: "I went to the bathroom about a dozen times and threw up, actually physically threw up, before I made the call."

155.   Other officers have been bullied and ostracized by those they once considered not just coworkers, but family.

156.   Some have been pushed out of the department, and some have attempted suicide.

20

Case 1:24-cv-02903-PKC    Document 1-1    Filed 04/17/24    Page 25 of 29

157.    When push comes to shove, quite literally in the case of excessive force, it is easy to say that one will intervene and stop unconstitutional behavior of fellow officers in the same way that everyone thinks they would respond bravely in an emergency.

158.    In reality, officers need specific and realistic instruction and regular training on how to navigate these complex situations or they will never report misconduct and will likely, help cover it up instead.

159.    THE CITY OF NEW YORK knows to a moral certainty that failing to provide training and policies on how to intervene in and report misconduct make it extremely difficult to follow the policy as written.

160.    THE CITY OF NEW YORK knows to a moral certainty that failing to enact policies to make it easier and safer for officers to report misconduct will mean that most constitutional violations, including egregious violations involving deaths and horrific acts, will go unreported or will be actively covered up.

161.    THE CITY OF NEW YORK has done nothing to revise its policies or training to prevent these inevitable consequences of its failures from harming citizens like Plaintiff.

162.    Here, the individual Defendants as well as the numerous other NYPD officers witnessed the force used against Plaintiff while he was handcuffed at the precinct, but did nothing, and said nothing, thereby ensuring that the blatant constitutional violations committed in their presence continued, including further physical assault, and denial of medical treatment.

163.    While the individual Defendants bear responsibility for their own acts and omissions, THE CITY OF NEW YORK is also responsible for its egregious and longstanding failures that led to the violation of Plaintiff's constitutional rights and irreparably harmed Plaintiff.

21

164.   THE CITY OF NEW YORK has failed to train its officers on their duty to intervene in unconstitutional conduct by other officers, including the use of excessive force and the denial of medical treatment to those like Plaintiff, who are injured by excessive force.

165.   THE CITY OF NEW YORK knows to a moral certainty that the ongoing failure to train its officers to conduct lawful and constitutional street-level encounters will lead to officers making unconstitutional choices that sometimes have horrific and deadly consequences.

166.   Plaintiff was damaged by the HE CITY OF NEW YORK's ongoing failure to train its officers, and failure to promulgate policies that encourage the lawful policing of New York City and discourage unlawful, dishonest, and criminal behavior among NYPD officers.

### SIXTH CAUSE OF ACTION
**Violations of the New York City Human Rights Law Against all Defendants**

167.   Plaintiff repeats and realleges the allegations contained in the foregoing paragraph as if set forth fully herein.

168.   Pursuant to New York City Human Rights Law (NYCHRL) § 8-502, Plaintiff will serve a copy of this Second Amended Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, thereby satisfying the notice requirements of that section.

169.   The sidewalk where Plaintiff was walking when he was stopped, questioned, arrested, assaulted, battered, frisked, and had excessive force used against him, was a public accommodation within the meaning of the New York City Human Rights Law.

170.   Defendants denied, interfered with, and/or obstructed Plaintiff's use of the sidewalk.

171.   Defendants treated Plaintiff differently than the non-Black individuals who, used and accessed the same public accommodations.

22

172.	Plaintiff was caused to sustain damages, including, but not limited to serious physical injuries, because of the Constitutional violations carried out and/or allowed by Defendants.

173.	As a result of Defendants' discrimination, Plaintiff was prevented from used and/or accessing the same public accommodations as non-Black individuals.

174.	The aforesaid occurrence and resultant injuries to the Plaintiff, were caused solely and wholly by reason of the intentional, negligent, careless, and reckless acts of Defendants.

175.	As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

## SEVENTH CAUSE OF ACTION
### *Bivens* Claim against Defendants EGILMEZ, TIETJEN, and ARNOLD only

176.	Plaintiff repeats and realleges the allegations contained in the foregoing paragraph as if set forth fully herein.

177.	Pleading in the alternative, Plaintiff brings claims against Defendants EGILMEZ, TIETJEN, and ARNOLD pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

178.	Plaintiff pleads in the alternative that at all relevant times alleged herein, Defendants EGILMEZ, TIETJEN, and ARNOLD were acting under color of federal law.

179.	At all relevant times herein, Defendants EGILMEZ, TIETJEN, and ARNOLD deprived Plaintiff of certain rights, privileges, or immunities secured by the Constitution of the United States, including his rights to be free from excessive force, false arrest, and malicious prosecution, and unlawful denial of medical treatment and care pursuant to the Fourth and Fourteenth Amendments of the Constitution.

23

Case 1:24-cv-02903-PKC   Document 1-1   Filed 04/17/24   Page 28 of 29

180.    Defendants EGILMEZ, TIETJEN, and ARNOLD, failed to intervene to stop or prevent the constitutional violations that occurred in their presence.

181.    Plaintiff was caused to sustain damages, including, but not limited to serious physical injuries, and violation of his Constitutional rights because of the acts and omissions of Defendants EGILMEZ, TIETJEN, and ARNOLD.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered as follows: Plaintiff demands compensatory and punitive damages, in the amount not to exceed jurisdictional limits, for each of the above-stated causes of action against all Defendants; together with costs and disbursements of this action and legal fees pursuant to 42 U.S.C. § 1988; and such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
      August 22, 2023

Yours, etc.
LIAKAS LAW, P.C.
*Attorneys for Plaintiff*
40 Wall Street
50th Floor
New York, New York 10005
(212) 937-7765

By: _____
      CASSANDRA ROHME, ESQ.

24

## VERIFICATION

CASSANDRA ROHME, an attorney duly admitted to practice in the Courts of the State of New York, says that she is an associate in the office of Liakas Law, P.C., attorneys for Plaintiff ANTONIO MADERA, and affirms the following statements to be the truth under penalties of perjury, pursuant to CPLR § 2106:

That she has read the foregoing Second Supplemental Summons and Second Amended Complaint and knows the contents thereof; that the same is true to her knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, she believes them to be true based on conversations with the Plaintiff and investigations conducted by the office of the undersigned.

Deponent further states that the reason why this verification is not made by Plaintiff ANTONIO MADERA is that Plaintiff is not presently in the County where the undersigned maintains her office.

Dated: New York, New York
      August 22, 2023

**CASSANDRA ROHME, ESQ.**

25