UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANTONIO MADERA,

                            Plaintiffs,                    24-cv-2903 (PKC)

            -against-                              OPINION AND ORDER

UNITED STATES OF AMERICA, THE CITY
OF NEW YORK, CRAIG W. TIETJEN,
WILLIAM ARNOLD, METEHAN EGILMEZ,
OMAR SAAD and DOUGLAS LOPEZ,

                            Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

            Defendants Craig W. Tietjen, William Arnold and Metehan Egilmez are officers

employed by the United States Park Police (the "Park Police" and "Park Police defendants").

Plaintiff Antonio Madera asserts that they deprived him of protections guaranteed by the United

States Constitution when they used excessive force against him, participated in his false arrest

and malicious prosecution and denied him medical treatment.  Madera brings a claim against the

Park Police defendants under 42 U.S.C. § 1983, asserting that although they are federal officers,

they acted under color of state law because they conspired with members of the New York City

Police Department ("NYPD") and exercised power afforded to them by a New York statute.  In

the alternative, Madera asserts that the Park Police defendants acted under the color of federal

law, and brings a claim under Bivens v. Six Unknown Named Agents of Fed. Bureau of

Narcotics, 403 U.S. 388 (1971).  He also asserts that their actions denied him access to a public

accommodation on the basis of race, and brings a claim under the New York City Human Rights

Law (the "NYCHRL").

The Park Police defendants move to dismiss all claims against them pursuant to Rule 12(b)(6), Fed. R. Civ. P. As will be explained, the section 1983 claim will be dismissed because, accepting the truth of Madera's allegations, the Park Police defendants enforced New York law in their capacity as federal officers, not as state actors. The <u>Bivens</u> claim will be dismissed because the claim arises in a "new context" and there are "special factors" that preclude extension of the <u>Bivens</u> remedy. <u>Egbert v. Boule</u>, 596 U.S. 482 (2022). Lastly, the NYCHRL claim will be dismissed as to the Park Police defendants because Madera does not plausibly allege that their conduct amounted to the denial of a public accommodation.

BACKGROUND.

For the purposes of this Rule 12(b)(6) motion and in its summary of the Complaint, the Court accepts Madera's non-conclusory factual allegations as true. <u>See</u>, <u>e.g.</u>, <u>In Re Shanda Games Ltd. Sec. Litig.</u>, 128 F.4th 26, 41 (2d Cir. 2025).

On January 7, 2020, Madera was near Battery Place and West Street in Lower Manhattan, where he managed ticket-selling agents as an employee of Midtown Tours, a tourism company. (Second Amended Complaint (the "Complaint" or "Compl't") ¶¶ 29-33.) The Park Police defendants, along with NYPD officer Omar Saad, approached Madera from behind and demanded to search him. (Compl't ¶ 35.) Madera objected and asked why the officers wanted to conduct a search. (Compl't ¶ 36.) When Madera walked away, the Park Police defendants struck him in the head and body with what Madera believes were police batons and forced him to the ground while continuing to strike him. (Compl't ¶¶ 39-40.) Madera did not resist arrest or attempt to strike any officer. (Compl't ¶¶ 42-43.)

The officers refused to provide Madera with medical treatment and a bystander called an ambulance. (Compl't ¶ 45.) Madera was transported to a hospital, where he showed

signs of traumatic brain injury, including confusion, agitation, looping words and inability to recall the date or year. (Compl't ¶ 47.) Tietjen and Arnold were not forthcoming with medical staff about the extent of the force used against Madera and did not disclose that he had been mute and unresponsive for several minutes. (Compl't ¶¶ 48-50.) Tietjen and Arnold told hospital staff that Madera suffered from a psychiatric episode and they would not permit staff to examine him unless he was sedated. (Compl't ¶¶ 54-55.) Madera states that he has a severe allergy to a sedative called Haldol and successfully objected to its administration. (Compl't ¶¶ 56-58.) Madera asserts that Tietjen and Arnold prevented hospital staff from administering a more thorough examination that would have revealed that he had suffered traumatic brain injury. (Compl't ¶¶ 52-53.)

At the insistence of Tietjen and Arnold, Madera was removed from the hospital approximately an hour after he arrived, and taken to the NYPD's First Precinct, where Madera continued to show symptoms consistent with a traumatic brain injury. (Compl't ¶¶ 59-62.) While Madera was in rear handcuffs, Arnold threw him to the ground and left him there for several minutes, before he was taken to a holding cell, where Arnold, Tietjen and defendant Douglas Lopez engaged in additional acts of force, including strikes to the face. (Compl't ¶¶ 63-69.)

Madera asserts that the individual defendants made false statements to the Brooklyn District Attorney for use in his prosecution. (Compl't ¶¶ 71-73.) Madera was charged with obstruction of government administration, resisting arrest and harassment in the second degree, arraigned on January 8, 2020, and released on his own recognizance. (Compl't ¶ 74-75.) All charges against him were dropped on July 14, 2020. (Compl't ¶ 77.)

Pursuant to 42 U.S.C. § 1983, Madera asserts that the Park Police defendants deprived him of the protections of the Fourth and Fourteenth Amendments by subjecting him to excessive force, falsely arresting him, maliciously prosecuting him and denying him medical treatment, all while acting color of state law. (Compl't ¶¶ 81-93.) In the alternative, Madera brings a <u>Bivens</u> claim against the Park Police defendants, premised on the assertion that they acted under the color of federal law. (Compl't ¶¶ 176-81.) He separately brings a claim under the NYCHRL, asserting that because he is Black, defendants denied him access to a public sidewalk, which he asserts is a public accommodation. (Compl't ¶¶ 167-75.)

This action was originally filed in the New York Supreme Court, New York County. (ECF 1.) On April 17, 2024, the United States removed the action to federal court pursuant to 28 U.S.C. § 2679(d)(2) because the Second Amended Complaint added the Park Police defendants as parties. (ECF 1.) The Second Amended Complaint also brought common law claims of false arrest, malicious prosecution and assault and battery against the Park Police defendants. (Compl't ¶¶ 94-114.) By a Stipulation and Order of August 6, 2024, the United States was substituted as defendant for each Park Police defendant under the Federal Tort Claims Act for the three common law claims. (ECF 18.) Only the Park Police defendants have filed a motion to dismiss.

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. <u>Iqbal</u>, 556 U.S. at 678.

Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Michael Grecco Products, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir. 2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)).

DISCUSSION.

I.    MADERA'S SECTION 1983 CLAIM AGAINST THE PARK POLICE
        DEFENDANTS WILL BE DISMISSED.

Madera seeks to hold the Park Police defendants liable under 42 U.S.C. § 1983, urging that because they were enforcing New York law and worked in collaboration with NYPD officers, they acted under color of state law and are liable as state actors. But federal law enforcement officers often act jointly with state officials or enforce a state law based on powers expressly afforded to them as federal officers, not as state actors. Because the Complaint does not plausibly allege facts describing the extremely limited circumstances in which a federal official can be liable as a state actor under section 1983, Madera's section 1983 claim will be dismissed.

Section 1983 provides for an action to redress "the deprivation of any rights, privileges or immunities secured by the Constitution and laws" committed by a person acting under color of state law. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)).

"The determination as to whether a non-state party acts under color of state law requires an intensely fact-specific judgment unaided by rigid criteria as to whether particular conduct may be fairly attributed to the state." Arar v. Ashcroft, 585 F.3d 559, 568 (2d Cir. 2009). Typically, however, "[a]n action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n. 4 (2d Cir. 1991); accord United States v. Acosta, 502 F.3d 54, 60 (2d Cir. 2007) ("Section 1983, of course, does not apply to allegedly unlawful acts of federal officers . . . ."). "A federal actor may be subject to section 1983 liability where there is evidence that the federal actor was engaged in a 'conspiracy' with state defendants." Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147, 154 (2d Cir. 2006). "[E]ven specific allegations of conspiracy, if conclusory, would not be sufficient to state a claim for conspiratorial violation of [a plaintiff's] rights." Morales v. City of New York, 752 F.3d 234, 237 (2d Cir. 2014).

Judge Garnett recently summarized the circumstances in which federal officers may be liable under section 1983:

> Federal actors can potentially be held liable under § 1983 under extremely limited circumstances where their conduct is the joint product of the exercise of a State power and of a non-State power and where the state or its officials played a significant role in the result. Cooperation between state and federal bureaucracies is insufficient; federal actors must have acted with an improper motive rather than just in a spirit of cooperation with the state defendants. Moreover, federal officers who conspire with a state officer may act under color of state law, but since federal officials typically act under color of federal law, they are rarely deemed to have acted under the color of state law.

Escobar v. Correa, 2024 WL 4042122, at *6 (S.D.N.Y. Sept. 4, 2024) (citations, quotation marks and alterations omitted).

In <u>Escobar</u>, Judge Garnett granted a motion to dismiss a section 1983 claim brought against two deputy United States Marshals who allegedly used excessive force alongside NYPD members to arrest a plaintiff who absconded from a Queens County court after his bail was revoked. <u>Id.</u> at *1, *6-8 & n. 3. The plaintiff was then transported from the Bronx to central booking in Queens. <u>Id.</u> at *2. Judge Garnett concluded that the deputy Marshals acted pursuant to a federal grant of authority as deputized members of the federal Marshal Fugitive Task Force. <u>Id.</u> at *7. The execution of a state warrant and presence of deputized state law-enforcement officers did not alter the federal nature of the conduct, and it was "plainly insufficient" to merely allege that the task force included state employees and that defendants acted in violation of state law. <u>Id.</u>

Section 2.15(9) of the New York Criminal Procedure Law expressly provides that Park Police officers can enforce New York's criminal laws, including the authority to make a warrantless arrest and to use physical force in making an arrest. N.Y. C.P.L. §§ 2.15(9), 2.20(1)(a), (b). "[U]nder CPL 2.15, certain 'federal law enforcement officers' are accorded limited peace officer powers." <u>People v. Page</u>, 35 N.Y.3d 199, 206 (2020). Section 2.15(9) incorporates several provisions of CPL section 140.25. "In fact, U.S. Park Police officers are granted broader authorities [under section 2.15(9)] than most of their federal counterparts." <u>Evans v. Solomon</u>, 681 F. Supp. 2d 233, 241-42 (E.D.N.Y. 2010).

In adopting section 2.15, "[t]he obvious intention was to grant the designated federal officers specified powers to enforce New York (as distinguished from federal) law and to extend those powers to locations beyond federal property." N.Y. C.P.L. § 2.15, Practice Commentary (McKinney's). "[S]ection 2.15 does establish that when circumstances such as those faced by [the officer] arise, New York encourages federal officers to enforce New York

law." United States v. Hoy, 137 F.3d 726, 731 n.1 (2d Cir. 1998); see also United States v. Samuels, 2004 WL 2823079, at *3 (S.D.N.Y. Dec. 7, 2004) (DEA agents lawfully made a warrantless arrest for driving with a defective tail light under New York law, consistent with CPL section 2.15) (Patterson, J.); People v. Boyea, 44 A.D.3d 1093, 1094 (3d Dep't 2007) (Border Patrol officer's "status as a federal agent did not deprive him of authority" to search vehicle for violation of state law).

Madera urges that the grant of authority under section 2.15(9) demonstrates that the Park Police defendants acted under color of state law when they arrested Madera and used force against him.  But without more, enforcement of a state law in the course of a federal officer's work does not make that officer a state actor.  Section 2.15 conditions its grant of authority on the officer's position at one of the identified federal agencies.  While the Court has been unable to locate any authority that discusses section 2.15 in relation to section 1983, Evans considered section 2.15(9) in the context of a Bivens claim premised on the officer acting under color of federal law, and concluded that the statute permitted a Park Police officer to make a warrantless stop for a traffic offense.  681 F. Supp. 2d at 241-44.  In criminal proceedings, the Second Circuit has cited section 2.15 to support the conclusion that a defendant can be guilty of the crime of assaulting a federal officer who is in the process of enforcing a state law.  Hoy, 137 F.3d at 731 (a deputy Marshal "is expected and authorized" to intervene "where there is harm or a threat of harm as a consequence of the violation of state law."); cf. United States v. Reid, 517 F.2d 953, 964 (2d Cir. 1975) ("If DEA agents or other federal law enforcement officers do what they are properly expected to do in the enforcement of state criminal laws, they should have the same federal protection they would receive in the performance of their other duties.").  These

decisions support the conclusion that a federal officer enforcing a state law under section 2.15 does so under color of federal law, not as a state actor.

That the Park Police defendants acted within the scope of their authority as federal officers is further supported by sections .06 and .07 of Park Police General Order No. 2101.  (ECF 32-7.)  The General Order "allows the exercise of such state law enforcement authority when there is some sort of unexpected occurrence that requires immediate action" while "outside the National Park System" and states that "[p]rosecution of all state law offenses . . . shall be handled only in State court."  Gen. Order § 2101.06(C).  The General Order quotes from CPL section 2.15(9) when noting that a Park Police officer may make an arrest under New York law where there is reasonable cause to believe that "any offense" has been committed.  Id. § 2101.07(A)(1).  While this General Order is not among the policies currently in effect on the Park Police website,[1] it is consistent with the plain language of CPL 2.15(9) and supports the conclusion that Park Police officers act in a federal capacity when enforcing New York law.  Cf. Hoy, 137 F.3d at 730 (courts and Congress use "expansive reasoning" when determining whether enforcement of state law is part of an officer's official duties, including consideration of unwritten policies).

Madera also urges that the Park Police defendants could not have acted under color of federal law because they were not on federal property during the events described in the Complaint, and even accompanied Madera to the NYPD precinct.  (Opp. Mem. at 17-18.)  But, as previously discussed, there is ample precedent recognizing that federal law enforcement officers have authority to enforce state law, and the view of the Park Police as set forth in the

---

[1] https://www.nps.gov/subjects/uspp/u-s-park-police-general-orders.htm (last visited April 4, 2025)

General Order permits the exercise of state law enforcement authority "outside the National Park System."

To the extent that the Complaint purports to describe the Park Police defendants as participants in a conspiracy, conclusory allegations that they "conspired" or acted "in conspiracy" (Compl't ¶¶ 82-83, 85) with state actors are legal labels not afforded a presumption of truth. See, e.g., Doe v. Fenchel, 837 Fed. App'x 67, 68-69 (2d Cir. 2021) ("'A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'") (quoting Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) (per curiam)).  As Judge Garnett observed, mere cooperation between state and federal officers is insufficient, and a plaintiff must identify an improper motive of the federal actors.  Escobar, 2024 WL 4042122, at *6 ("[c]ooperation between state and federal bureaucracies is insufficient; federal actors must have acted with an improper motive rather than just in a spirit of cooperation with the state defendants.") (quotation marks omitted). [2]

Accepting the truth of the Complaint's non-conclusory factual allegations, Madera describes actions taken by federal law enforcement officers to enforce state law based on their authority as federal officials, and not as state actors.  The motion to dismiss Madera's section 1983 claim will therefore be granted.

## II.    MADERA'S BIVENS CLAIM WILL BE DISMISSED.

Pleading in the alternative, Madera also brings a Bivens claim, asserting that the Park Police Defendants deprived him of rights guaranteed by the Constitution while acting under

---

[2] On the question of whether defendants acted under the color of state law, the Court does not afford weight to certain language in the Stipulation and Order substituting the United States as defendant on Madera's FTCA claims. (ECF 18.)  While that Stipulation and Order provides that defendants' alleged wrongful acts occurred within the scope of their federal employment as Park Police, it also states that "[n]othing in this Stipulation shall be construed to impact Plaintiff's Bivens or Section 1983 claims . . . ." (Id.)

color of federal law.  (Compl't ¶¶ 176-81.)  Because Madera's claim arises in a new context and special factors counsel against an extension of the <u>Bivens</u> remedy, the claim fails as a matter of law and will be dismissed.  <u>Egbert v. Boule</u>, 596 U.S. 482 (2022).

To state a valid <u>Bivens</u> claim against a federal official in his or her individual capacity, a plaintiff must allege that he or she "has been deprived of a constitutional right by a federal agent acting under color of federal authority."  <u>Thomas v. Ashcroft</u>, 470 F.3d 491, 496 (2d Cir. 2006).  Not all such wrongs, however, give rise to a <u>Bivens</u> action.  The Supreme Court historically recognized three categories of <u>Bivens</u> claims and since emphasized that "expanding the . . . remedy is now a 'disfavored' judicial activity."  <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 135 (2017) (quoting <u>Iqbal</u>, 556 U.S. at 675).  The approved claims arose in: (i) <u>Bivens</u> itself, a Fourth Amendment search-and-seizure suit against federal narcotics officers; (ii) <u>Davis v. Passman</u>, 442 U.S. 228 (1979), a Fifth Amendment due process suit against a congressman-employer on the grounds of gender discrimination; and (iii) <u>Carlson v. Green</u>, 446 U.S. 14 (1980), an Eighth Amendment cruel and unusual punishment suit against federal prison authorities for failure to provide adequate medical treatment.  <u>See Ziglar</u>, 582 U.S. at 130-31.  "After those decisions, however, the Court changed course," and has "consistently rebuffed requests to add to the claims allowed under <u>Bivens</u>."  <u>Hernandez v. Mesa</u>, 589 U.S. 93, 99, 102 (2020).

A bifurcated framework governs whether a <u>Bivens</u> claim should proceed.  First, the court determines "whether the request involves a claim that arises in a 'new context'" for a <u>Bivens</u> action.  <u>Id.</u> at 102.  The court's "understanding of a 'new context' is broad," and the court "'regard[s] a context as 'new' if it is different in a meaningful way from previous <u>Bivens</u> cases decided by'" the Supreme Court.  <u>Id.</u> (quoting <u>Ziglar</u>, 528 U.S. at 147).  "[A] case that involves a new category of defendants" is a new context that does not allow for a <u>Bivens</u> remedy because

it is a "situation[ ] in which a court is not undoubtedly better positioned than Congress to create a damages action." Egbert, 596 U.S. at 492 (quotation marks omitted).

Second, "if a claim arises in a new context, a Bivens remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Id. (quoting Ziglar, 582 U.S. at 136). If "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a Bivens remedy," "even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." Id. at 498 (quotation marks omitted). "If there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." Id. (quotation marks omitted). "While our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." Id.

Following Egbert, the Second Circuit has issued two summary orders affirming dismissal of Bivens claims against new categories of defendants. Cohen v. Trump, 2024 WL 20558, at *2-3 (2d Cir. Jan. 2, 2024) (affirming dismissal of Bivens claim because Bureau of Prisons officials are a new category of defendants and claim related to solitary confinement would have extended the Bivens remedy) (summary order); Lewis v. Bartosh, 2023 WL 8613873, at *2 (2d Cir. Dec. 13, 2023) (affirming dismissal of Bivens claim because deputy United States Marshals are a new category of defendants and an alternative remedial scheme was in place) (summary order); see also Escobar, 2024 WL 4042122, at *4 (citing Cohen and Lewis in dismissing Bivens claim against deputy Marshal).

Judge Chen of the Eastern District of New York recently dismissed a <u>Bivens</u> claim against a Park Police officer because it was brought "against an officer from a different agency than in <u>Bivens</u>," noting that "the difference in agency is now sufficient, after <u>Egbert</u>, to create a new context." <u>Gray v. Gomez</u>, 728 F. Supp. 3d 264, 271 (E.D.N.Y. 2024) (quotation marks and alterations omitted). In <u>Gray</u>, the officer allegedly used a taser upon plaintiff when a fight broke out at a barbecue. <u>Id.</u> at 266. Plaintiff was arrested and transported by Park Police officers to an NYPD precinct and charged in Kings County Criminal Court, and all charges were later dismissed. <u>Id.</u> at 266-67. Plaintiff brought a <u>Bivens</u> claim asserting false arrest, excessive force and deprivation of the right to fair trial. <u>Id.</u> at 267. While plaintiff's factual allegations broadly paralleled those in <u>Bivens</u> itself, including a line-level law-enforcement officer allegedly using excessive force and making a warrantless false arrest in violation of established law, the "caution" advised in <u>Egbert</u> and the Second Circuit's summary orders in <u>Cohen</u> and <u>Lewis</u> led Judge Chen to conclude that defendant's role as a Park Police officer presented a new context for <u>Bivens</u> purposes. <u>Id.</u> at 269-72.

On the second prong of the <u>Bivens</u> analysis, Judge Chen concluded that complaint procedures used by the Park Police were a special factor that made the <u>Bivens</u> remedy unavailable. <u>Id.</u> at 273 ("the existence of the Park Police's complaint procedures <u>alone</u> forecloses Plaintiff's claims.") (emphasis in original). She stated that, under <u>Egbert</u>, "the Court ultimately 'cannot second guess' that remedial structure by superimposing a <u>Bivens</u> remedy" where it does not already exist." <u>Id.</u> (quoting <u>Egbert</u>, 596 U.S. at 498); <u>see also</u> <u>Lewis</u>, 2023 WL 8613873, at *1 ("if there is an 'alternative remedial structure,' a <u>Bivens</u> remedy is generally 'unavailable.'") (quoting <u>Egbert</u>, 596 U.S. at 492, 493).

This Court is persuaded by Judge Chen's thorough opinion, which addressed a Bivens claim factually similar to Madera's. Egbert, and its application in the Cohen and Lewis summary orders, require the conclusion that Madera's claim against the Park Police defendants presents a "new context" under Bivens. The Court further concludes that the Internal Affairs Unit of the Park Police provides a complaint procedure for the investigation of claims. The Park Police website states: "The United States Park Police Internal Affairs Unit documents and investigates allegations of misconduct against Department personnel that are received both through internal (administrative) and external (citizen generated) means. . . . The supervisor assigned to the case will conduct a thorough investigation, to include an interview of the involved employee and any witnesses that have been identified."[3] When a complaint is sustained, "appropriate disciplinary action will be taken against the affected employee." The agency's alternative remedial scheme "preclude[s] a Bivens remedy here . . . ." Lewis, 2023 WL 8613873, at *2 (citing Marshals Service remedial scheme); see also Kunstler v. Central Intelligence Agency, 2023 WL 8776339, at *5 (S.D.N.Y. Dec. 19, 2023) (CIA's internal remedial process precluded Bivens relief) (Koeltl, J.).[4]

---

[3] https://www.nps.gov/subjects/uspp/file-a-complaint.htm (last visited: April 4, 2025)

[4] Hicks v. Ferreyra, 64 F.4th 156 (4th Cir. 2023), affirmed a jury verdict and damages awarded on a Bivens claim brought by a secret service agent who asserted that he had been unlawfully detained by Park Police officers. Among other things, the Fourth Circuit noted that defendants did not identify an alternative remedial procedure offered by the Park Police. Id. at 168 n. 3. The Hicks defendants also first challenged the availability of Bivens relief in an interlocutory appeal filed after the district court denied a motion for summary judgment on qualified immunity grounds, and apparently did not raise the issue with the district court until a motion brought under Rule 50(a) during the trial. See id. at 163-64. The absence of an alternative remedy and the procedural history of Hicks distinguish that case from Madera's claims. Courts outside of the Fourth Circuit have declined to adopt the reasoning of Hicks. See Lovett v. United States, 2024 WL 4286054, at *6 (D.D.C. Sept. 25, 2024) (Hicks did not follow Egbert's "admonition to resist 'superficial similarities' when asking whether a case presents a new context."); Gray, 728 F. Supp. 2d at 270-72 (discussing Hicks but concluding that "'our watchword is caution.'") (quoting Egbert, 596 U.S. at 491).

Because Madera's <u>Bivens</u> claim arises in a new context and because the availability of Park Police complaint procedures is a special factor that makes a <u>Bivens</u> remedy unavailable, the <u>Bivens</u> claim fails as a matter of law and will be dismissed.

III.    THE COURT DECLINES TO REACH DEFENDANTS' ARGUMENTS ON TIMELINESS.

As an alternative grounds for dismissal, the Park Police defendants urge that Madera's section 1983 and <u>Bivens</u> claims should be dismissed as time-barred because they were not filed within the three-year limitations period.  <u>See</u> <u>Kane v. Mount Pleasant Central School District</u>, 80 F.4th 101, 104 (2d Cir. 2023); <u>Tapia-Ortiz v. Doe</u>, 171 F.3d 150, 151 (2d Cir. 1999).

In response, Madera argues that the claims were subject to tolling under New York Executive Order 202.8, under which then-Governor Cuomo tolled the time period for the commencement of personal-injury actions due to the Covid-19 pandemic.  <u>See</u> 9 C.R.R.-N.Y. § 8.202.  District Courts have reached conflicting conclusions about the applicability of that Executive Order to section 1983 claims.  <u>See</u> <u>Miehle-Kellogg v. County of Suffolk</u>, 2024 WL 5120017, at *10-12 (E.D.N.Y. Dec. 16, 2024) (surveying authorities and concluding that Executive Order 202.8 tolls section 1983 claims).  The Second Circuit has not yet spoken to the issue.  <u>See</u> <u>Mallet v. New York State Dep't of Correction & Community Supervision</u>, 126 F.4th 125, 134 n.7 (2d Cir. 2025) (declining to address the issue as "not necessary to decide this appeal.").  The Court is unaware of authority that considers what effect, if any, the Executive Order has on the tolling of a <u>Bivens</u> claim.

Because the Complaint does not plausibly state a claim against the Park Police defendants under section 1983 or <u>Bivens</u>, the Court need not decide whether the claims were timely brought, including the issue of whether the Executive Order tolled the period to bring these claims.

IV.    MADERA DOES NOT PLAUSIBLY STATE A CLAIM AGAINST
       THE PARK POLICE DEFENDANTS UNDER THE NYCHRL.

Madera asserts that the Park Police defendants violated the NYCHRL.  (Compl't

¶¶ 167-75.)  He asserts that a sidewalk is a public accommodation under the NYCHRL and that

he was treated differently than non-Black individuals who used that same public

accommodation.  (See id.)

The NYCHRL applies to "any person who is the owner . . . or employee of any

place or provider of public accommodation . . . ."  NYC Admin. Code § 8-107(4).  "The term

'place or provider of public accommodation' includes providers, whether licensed or unlicensed,

of goods, services, facilities, accommodations, advantages or privileges of any kind, and places,

whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or

privileges of any kind are extended, offered, sold, or otherwise made available."  Id. § 8-102.

The NYCHRL makes it unlawful "[b]ecause of any person's actual or perceived race . . . [to]

withhold from or deny to such person the full and equal enjoyment, on equal terms and

conditions, of any of the accommodations, advantages, services, facilities, or privileges of the

place or provider of public accommodation . . . ."  Id. § 8-107(4)(1)(a).  The NYCHRL provides

that its terms "shall be construed liberally for the accomplishment of [its] uniquely broad and

remedial purposes."  Id. § 8-130(a).  "[E]ven under the City HRL, the general principle of liberal

construction does not substitute for evidence . . . ."  Russell v. New York Univ., 42 N.Y.3d 377,

385 (2024) (quotation marks and brackets omitted).

In discussing administrative enforcement of the New York State Human Rights

Law (the "NYSHRL"), the Appellate Division has noted that while law enforcement "could"

provide a public accommodation "under certain circumstances," "arrest and incarceration are

properly viewed as the antithesis of a public accommodation."  Letray v. New York State Div. of

Human Rights, 181 A.D.3d 1296, 1297 (4th Dep't 2020) (emphasis in original; quotation marks and ellipsis omitted).  It affirmed the dismissal of petitioner's administrative complaint for lack of jurisdiction, stating that "it defies logic to suggest that law enforcement is providing 'conveniences' or 'services' to those arrested and detained."  Id.; see also O'Brien v. City of Syracuse, 2023 WL 6066036, at *24 n. 11 (N.D.N.Y. Sept. 18, 2023) (concluding that the NYSHRL "does not apply to police-citizen encounters . . . .") (citing Letray).  While the NYSHRL differs from the NYCHRL, they are both construed liberally.  See, e.g., Griffith v. Coney Food Corp., 2020 WL 4748452, at *3 n. 4 (E.D.N.Y. Aug. 17, 2020).

In D.H. v. City of New York, 309 F. Supp. 3d 52, 81 (S.D.N.Y. 2018), the undersigned assumed without deciding that services offered by the NYPD could constitute a public accommodation under the NYCHRL and NYSHRL, but that an officer's determination of probable cause to arrest a person was not a service, accommodation or other act covered by the NYCHRL and NYCHRL, and was instead "a power bestowed by statute to police and peace officers that is held in check by two centuries of established judicial precedent" and "subject to well-developed state and federal constitutional restraints."  Id.  The Court dismissed plaintiffs' claim that their arrests were unlawful under the NYCHRL.  Id.

Madera argues that the NYCHRL claim is directed to the NYPD's interference with his use and enjoyment of a public sidewalk on the basis of race, as opposed to "mere arrest and detention . . . ."  (Opp. Mem. 23.)  But his NYCHRL claim expressly alleges that defendants "stopped, questioned, arrested, assaulted, battered, frisked, and [used] excessive force" against him, resulting in "serious physical injuries . . . because of the Constitutional violations carried out and/or allowed by Defendants."  (Compl't ¶¶ 169, 172.)  The claimed deprivations of Madera's constitutional rights are the same actions that allegedly deprived him of use and

enjoyment of the public sidewalk.  For the reasons set forth in <u>Letray</u> and <u>D.H.</u>, an officer's

actions during an arrest and use of force while making an arrest do not plausibly allege the denial

of a public accommodation under the NYCHRL.

        Madera's NYCHRL claim will therefore be dismissed as to the Park Police

defendants.

CONCLUSION.

        The motion to dismiss filed by Craig W. Tietjen, William Arnold and Metehan

Egilmez is GRANTED.  (ECF 30.)  The Clerk is respectfully directed to terminate the motion.

        SO ORDERED.

                                           P. Kevin Castel
                                 United States District Judge

Dated: New York, New York
      April 4, 2025